UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| KENNETH RAY HOGAN, | |
| Plaintiff, | |
| v. | CAUSE NO. 1:24-CV-194-GSL-JEM |
| HERSHBERGER, et al., | |
| Defendants. | |

OPINION AND ORDER

Kenneth Ray Hogan, a prisoner without a lawyer, filed an amended complaint. ECF 9. Under 28 U.S.C. § 1915A, the court must screen the amended complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must give a pro se complaint liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Hogan alleges an inmate named Kevin Harris "was able to take something and break into my cell" at the Allen County Jail on April 16, 2024. Once inside, Inmate Harris attacked Hogan's cellmate and then turned towards Hogan. Hogan held onto

Inmate Harris to protect himself, but Hogan was punished for doing so. He was taken to the hole, officers threw some of his property away, and he had to "sit in discipline." ECF 9 at 2. Hogan claims the incident caused him "trauma and paranoia," and he's worried because "[t]his door being popped [open] could happen to anyone." *Id*. He has sued Correctional Officer Jacob Litten and Sheriff Troy Hershberger for monetary damages. He also asks for permanent injunctive relief "for the locks to be fix[ed] and operating properly." *Id*. at 4.

As an initial matter, Hogan doesn't describe any actions by Officer Litten or Sheriff Hershberger that would subject them to individual liability. He claims in a generalized manner that he was physically threatened by another offender who was able to open his cell door, punished for attempting to protect himself, put in the hole and/or a segregation unit, and that "they don't care" if the door may be able to be popped open in the future. Vague allegations like these against the Sheriff must fail, as supervisor liability is insufficient to state a claim. *See e.g., Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018) and *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) (both noting that liability under 42 U.S.C. § 1983 is based on personal responsibility and that prison officials cannot be held liable for damages solely because they hold supervisory positions). This is a high standard, designed to ensure that "supervisors are responsible for their own acts but not for those of subordinates, or for failing to ensure that subordinates carry out their tasks correctly." *Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018). Additionally, without further details about Officer Litton's role in the incident, the allegations against him are insufficient as well. *See Burks*, 555 F.3d at 596

("[P]ublic employees are responsible for their own misdeeds but not for anyone else's."); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Only persons who cause or participate in the violations are responsible."); *see also Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) (claim must be plausible on its face and complaint must provide adequate factual content). Accordingly, the individual claims against Sheriff Hershberger and Officer Litton will be dismissed.

With regard to Hogan's assertion that he was unfairly placed in the hole and/or segregation, the Fourteenth Amendment provides state officials shall not "deprive any person of life, liberty, or property, without due process of law . . .." U.S. Const. amend. XIV, § 1. That said, due process is only required when punishment extends the duration of confinement or imposes "an atypical and significant hardship on him in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The Seventh Circuit has "concluded that inmates have no liberty interest in avoiding transfer to discretionary segregation—that is, segregation imposed for administrative, protective, or investigative purposes." *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008) (citing *Lekas v. Briley*, 405 F.3d 602, 608–09 & 608 n.4 (7th Cir. 2005) ("[R]eassignment from the general population to discretionary segregation does not constitute a deprivation of a liberty interest.")); *see also DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) ("[P]risoners possess neither liberty nor property in their classifications and prison assignments."); *Healy v. Wisconsin*, 65 Fed. Appx. 567, 568 (7th Cir. 2003) ("[I]nmates do not have a protected liberty interest in a particular security classification.") (citing *Sandin*, 515 U.S. at 486).

3

Although later cases have questioned the conclusion that placement in nonpunitive segregation can "*never* implicate a liberty interest," *see Williams v. Brown*, 849 Fed. Appx. 154, 157, n.3 (7th Cir. 2021) (emphasis added), timing plays a part in the analysis, even when conditions are significantly harsher. *See e.g., Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2017) ("Prisoners do not have a constitutional right to remain in the general population, but both the duration *and* the conditions of the segregation must be considered in determining whether due process is implicated.") (internal quotation marks, parenthesis, and citations omitted; emphasis in original); *Marion v. Columbia Correction Inst.*, 559 F.3d 693, 697-98 & nn.2–3 (7th Cir. 2009) (collecting cases that held segregation of two to ninety days does not trigger due process concerns and stating, "In a number of other cases, we have explained that a liberty interest may arise if the length of segregated confinement is substantial *and* the record reveals that the conditions of confinement are unusually harsh.") (emphasis added); *Lekas*, 405 F.3d at 612 (finding that up to ninety days in segregation does not affect liberty); *see also Wilkinson v. Austin*, 545 U.S. 209, 224 (2005) (recognizing "duration" is a component that plays a part in determining whether a liberty interest exists).

Here, Hogan doesn't allege that there were issues with any sort of disciplinary process that led to his placement in the hole and/or segregation. Rather, he claims—and the exhibits he attaches to his complaint confirm—that he was placed there immediately following the incident for administrative, protective, or investigative purposes. The problem for Hogan then, is that he must show both the length in segregation *and* the conditions violated the Constitution, and his complaint doesn't

4

plausibly allege either. With regard to length, Hogan doesn't say how long he was in the hole and/or segregation, but from the time of the incident to the time he signed his amended complaint (ECF 9 at 4) it was only eighty-five days. His allegation regarding timing is impermissibly vague, and, in general, less than ninety days isn't long enough to trigger due process concerns. *See Marion*, 559 F.3d at 697-98 & nn.2–3; *Lekas*, 405 F.3d at 612.

More importantly, Hogan doesn't describe the conditions in the hole and/or segregation, so the court can't conclude that the placement was atypically harsh compared to those associated with ordinary prison life. "Courts have deemed an inmate's liberty interest implicated only where the conditions are far more restrictive." *Earl v. Racine Cty. Jail*, 718 F.3d 689, 691 (7th Cir. 2013) (collecting cases and finding conditions where plaintiff was "allowed limited possessions, dressed in a 'suicide-proof gown,' served meals on Styrofoam trays, kept in continuous light for the first 24 hours, and closely and constantly monitored by prison staff" didn't trigger due process concerns). Here, Hogan hasn't described the conditions at all, so he hasn't stated any plausible due process claims regarding his placement in the hole and/or segregation. *See e.g., Bissessur*, 581 F.3d at 602.[1]

---

[1] Hogan also mentions that officers threw away some of his property. The Fourteenth Amendment provides that state officials shall not "deprive any person of life, liberty, or property, without due process of law . . .." However, a state tort claims act that provides a method by which a person can seek reimbursement for the negligent loss or intentional deprivation of property meets the requirements of the due process clause by providing due process of law. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable post deprivation remedy.") Indiana's tort claims act (Indiana Code § 34-13-3-1 *et seq*.) and other laws provide for state judicial review of property losses caused by government employees and provide an adequate post deprivation remedy to redress state officials' accidental or intentional deprivation of a person's

Finally, the court must consider whether Hogan has stated a plausible claim for permanent injunctive relief related to the broken locks on the cell doors. Hogan is a pretrial detainee, so his claims must be analyzed under the Fourteenth Amendment. *See generally Miranda v. Cty. of Lake*, 900 F.3d 335 (7th Cir. 2018). "Incarcerated people have a clearly established right to be free from physical harm inflicted by others in the institution." *Kemp v. Fulton Cty.*, 27 F.4th 491, 494 (7th Cir. 2022) (citing *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) ("[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners.")). The Seventh Circuit has extended the Fourteenth Amendment's objective unreasonableness test found in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015) to failure to protect claims. *See id*. at 495 (citing *Hardeman v. Curran*, 933 F.3d 816 (7th Cir. 2019)). Specifically, a pretrial detainee states a failure to protect claim when he alleges:

> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
> (2) Those conditions put the plaintiff at substantial risk of suffering serious harm;
> (3) The defendant did not take reasonable available measures to abate that risk, *even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved*—making the consequences of the defendant's conduct obvious; and
> (4) By not taking such measures, the defendant caused the plaintiff's injuries.

---

property. *See Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) ("Wynn has an adequate post deprivation remedy in the Indiana Tort Claims Act, and no more process was due."). Thus, the complaint doesn't state a claim with regard to Hogan's lost property.

*Id*. at 496 (emphasis added by 7th Cir.) (quoting *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc)). As to the second element, the Seventh Circuit has equated "substantial risk" to "risks so great that they are almost certain to materialize if nothing is done." *Brown v. Budz*, 398 F.3d 904, 911 (7th Cir. 2005). The third element "requires only that the defendant's conduct be objectively unreasonable." *Kemp*, 27 F.4th at 497. Negligence on the part of a defendant is not enough; instead, they "must intend to carry out a certain course of actions." *Id*. Overall, reasonableness "must be determined in light of the totality of the circumstances." *Pulera v. Sarzant*, 966 F.3d 540, 550 (7th Cir. 2020).

  Here, for the reasons noted above, it is clear Hogan has not stated plausible failure to protect claims against the named defendants in their individual capacities for the altercation that occurred on April 16, 2024. However, Hogan insists that the cell doors are still able to be popped open, that jail officials are now aware of the broken or malfunctioning locks yet have not fixed them, and that a physical altercation from another inmate could occur at any time due to the lack of security. "The seriousness of the risk to an inmate whose cell door can be opened from the outside without a key is obvious; the inmate can be attacked or otherwise harmed by other inmates." *Byron v. Dart*, 825 F. Supp. 2d 958, 963 (N.D. Ill. 2011) (citing *Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006)). Giving Hogan the benefit of the inferences to which he is entitled at this early stage, he has outlined a plausible ongoing security risk and will be allowed to proceed on an injunctive relief claim against Sheriff Hershberger in his official capacity for permanent injunctive relief related to the broken lock on his cell door. *See e.g., Daniel*

7

*v. Cook Cty.*, 833 F.3d 728, 737 (7th Cir. 2016) (constitutional duty to protect inmates under the Fourteenth Amendment "rests on the custodian"); *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011).

For these reasons, the court:

(1) GRANTS Kenneth Ray Hogan leave to proceed against Sheriff Troy Hershberger in his official capacity for permanent injunctive relief to ensure Kenneth Ray Hogan's cell door/lock comports with the conditions required by the Fourteenth Amendment;

(2) DISMISSES all other claims;

(3) DISMISSES Officer Jacob Litten;

(4) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Sheriff Troy Hershberger at Allen County Jail, with a copy of this order and the complaint (ECF 9);

(5) ORDERS the Allen County Sheriff to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(6) ORDERS, under 42 U.S.C. § 1997e(g)(2), Sheriff Troy Hershberger to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on April 25, 2025

/s/Gretchen S. Lund
JUDGE
UNITED STATES DISTRICT COURT